UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:11CV-00272-JHM**

**ADRIAN WRIGHT, MIKE HELMBRECHT,**
**AND JOE ATER**                                                                                **PLAINTIFFS**

**V.**

**CARBIDE INDUSTRIES, LLC**                                                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant for summary judgment [DN 24]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

On April 14, 16, and 17, 2010, Plaintiffs, Adrian Wright, Mike Helmbrecht, and Joe Ater, were injured while on the business premises of Defendant, Carbide Industries, LLC ("Carbide"), at its plant located in Jefferson County, Kentucky. The plant engages in the production of calcium carbide[1], calcium hydroxide, and acetylene gas. At the time of the injuries, Plaintiffs were employees of API Services, Inc. ("API"). Carbide regularly contracted with API to perform cleaning services at its Louisville facility between 2008 and 2010. Among the Carbide plant components API cleaned were roofs, pipes, generator lines, dust pipes, scrubber drain lines, duct work, crusher wells, and slurry tanks. API Services always provided the hydroblasters and vacuum trucks necessary to clean the equipment and other components at the plant. Carbide did not possess any of this equipment.

Between April 14, 2010 and April 19, 2010, API employees cleaned out a slurry tank, removed slurry from a tank and a pipeline, removed waste chemicals from a tunnel or pipeline under the slurry tanks, and vacuumed waste from the north crusher well. The Plaintiffs allege that they received burn injuries to their legs, hands, and feet as a result of their exposure to chemicals at the plant during this period of time. Wright alleges that he has also developed breathing problems. Following Plaintiffs' injuries, Plaintiffs Helmbrecht and Ater made a claim for, and received,

---

[1] Calcium carbide is used in the steel industry to remove sulfur from steel.

workers' compensation benefits against API Services. Plaintiff Wright applied for workers' compensation coverage, but the record does not reflect that he has been awarded benefits. Ricky Poynter, Carbide Industries Environmental Health and Safety Director, testified the Carbide required all subcontractors, like API Services, to obtain workers' compensation coverage for each employee. (Ricky Poynter Dep. at 48.) API maintained workers' compensation benefits for its employees.

In April of 2011, Plaintiffs filed suit against Carbide asserting claims for negligence and punitive damages. Plaintiffs allege that the Defendant "failed to provide Plaintiffs with adequate training, equipment, or supervision in the performance of these duties" and "failed to maintain their premises in reasonably safe condition by exposing Plaintiffs to dangerous chemicals and/or negligently failed to warn Plaintiffs of the known dangers of exposure to the chemicals located at the plant." (Second Amended Complaint ¶8.) Defendant filed responsive pleadings denying liability for the injuries. In addition, Defendant affirmatively plead that Plaintiffs' claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendant argues that it is a "statutory employer" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. In contrast, Plaintiffs contend that Carbide was not the statutory employer of Plaintiffs because Plaintiffs were not performing work that is a regular or recurring part of the work of Defendant. The Defendant now moves for summary judgment on this issue.

### III. DISCUSSION

KRS §342.690(1) provides that if an employer secures payment of workers' compensation under Chapter 342, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer . . . ." For purposes of this section, "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor

3

has in fact, secured the payment of compensation." Granus v. North Am. Philips Lighting Corp., 821 F.2d 1253, 1257 (6th Cir. 1987) (citing KRS § 342.690).

KRS §342.610(2) provides in part as follows:

> A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. . . . A person who contracts with another: . . .
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
> shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. . . .

KRS §342.610(2).

"The purpose of the provision of KRS 342.610 that a contractor is liable for compensation benefits to an employee [of] a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." Fireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 461 (Ky. 1986). By the same token, "if a defendant qualifies as a contractor, 'it has no liability in tort to an injured employee of a subcontractor' once worker's compensation benefits are secured." Giles v. Ford Motor Co., 126 Fed. Appx. 293, 295 (6th Cir. April 4, 2005)(quoting Fireman's Fund, 705 S.W.2d at 461). Essentially, "the Act treats the employees of a subcontractor as *de jure* employees of the contractor for the purposes of guaranteeing worker's compensation benefits." Giles, 126 Fed. Appx. at 295.

The issue presented in this case is whether the work being performed by Plaintiffs, as employees of API, was a "regular or recurrent" part of Defendant's business under KRS § 342.610(2)(b). KRS § 342.610(2)(b) provides that a contractor is one who contracts with another "[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade,

4

business, occupation, or profession of such person." KRS § 342.610(2)(b). Under Kentucky law, "recurrent" simply means occurring again or repeatedly. Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 924 (Ky. Ct. App. 1996); Pennington v. Jenkins-Essex Constr., Inc., 238 S.W.3d 660, 664 (Ky. Ct. App. 2006). "Regular" generally means customary or normal, or happening at fixed intervals. Id. See also General Elec. Co. v. Cain, 236 S.W.3d 579, 588 (Ky. 2007)("It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees."). Contrary to Plaintiffs' argument, "[e]ven though [a Defendant] may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." Fireman's Fund, 705 S.W.2d at 462. See also Blasko v. Mercy Health Partners-Lourdes, Inc., 2010 WL 5018168, *4 (Ky. Ct. App. Dec. 10, 2010); Black v. Dixie Consumer Products LLC, 2010 WL 497668, *6 (W.D. Ky. February 5, 2010); Burroughs v. Westlake Vinyls, Inc., 2008 WL 5192237, *4 (W.D. Ky. Dec. 11, 2008); Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 839 (W.D. Ky. Oct. 31, 2005); Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 823 (Ky. Ct. App. 1996). Thus, the fact that a defendant did not ordinarily perform the work itself, but usually subcontracted the work to others is a "distinction ... of no significance" under the statutes. Granus, 821 F.2d at 1257.

The courts in both Kentucky and the Sixth Circuit have consistently held that routine repairs and maintenance projects are a "regular or recurrent" part of business operations. Granus, 821 F.2d at 1257 (rebricking of a tank furnace used at glass factory was a regular and recurrent part of defendant's glass making business); Burroughs, 2008 WL 5192237, *5 (contractor's repair of pipes

used to distribute defendant's product was a regular and recurrent part of defendant's business); Thompson v. The Budd Co., 199 F.3d 799 (6th Cir.1999)(holding that the maintenance of heating, ventilation, and cooling system at an automobile parts stamping facility was regular and recurrent part of business); Murphy v. Louisville Gas & Electric Co., 2007 WL 3231550 (W.D. Ky. October 30, 2007)(contractor's preventive maintenance at defendant's power plant was a regular and recurrent part of defendant's business); Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 839 (W.D. Ky. Oct. 31, 2005)(contractor's installation of a new type of lift table at defendant's automobile manufacturing plant was a regular and recurrent part of business); Daniels, 933 S.W.2d 821 (finding that EPA emissions tests performed by contracted experts nine times per year were a regular part of LG & E's business); Hosack v. Grayson Rural Electric Co-op, 2004 WL 2482609 (Ky. Ct. App. Nov. 5, 2004) (maintenance of power line of electric company is regular and recurrent part of work of electric company). See also Himes v. United States, 645 F.3d 771, 781 (6th Cir. 2011)("Such maintenance work on an employer's physical plant is classified as a matter of law to be a regular and recurrent part of the employer's business.")). In each case, the court held that the maintenance and repair work constituted work of a kind which is a regular or recurrent part of the hiring company's business, and therefore, the hiring company was deemed a contractor pursuant to KRS § 342.610(2)(b).

In the present case, between April 14 and April 19, 2010, Carbide contracted with API to provide cleaning services for tanks and other equipment at the Louisville facility. The API employees cleaned a calcium hydroxide slurry tank by removing slurry from the tank and a pipeline, removed waste chemicals from a tunnel or pipeline under each of the slurry tanks, and dry-vacuumed calcium hydroxide dust from the north crusher well. Carbide's manufacturing process

6

involves heating and processing lime and coke to form calcium carbide, crushing and sizing the calcium carbide, and then adding water to the calcium carbide to create acetylene gas. Dust and/or calcium hydroxide slurry are normal by-products of the process. As a result, the system must be cleaned on a regular basis as part of the normal maintenance of the facility. The record reflects that API was frequently hired to remove the dust and slurry by-products. In fact, API cleaned the roofs, pipes, generator lines, dust pipes, scrubber drain lines, duct work, crusher wells, and slurry tanks numerous times in 2010 alone. (2010 Invoices from Carbide to API.) Additionally, Ricky Poynter testified that Carbide had used its own employees in the past to clean out the slurry tank. (Poynter Dep. at 30.) Clearly, the periodic cleaning of the slurry tanks, pipelines, crusher wells, and other equipment is integral to the work performed at Carbide's facility. Thus, based on the record before the Court and the cases discussed above, the Court finds that there is no genuine dispute of material fact that the periodic cleaning by API employees are a regular or recurrent part of Carbide's business.

The Court rejects the Plaintiffs' argument that because API did not own its own equipment to clean the equipment and did not have the manpower to perform the task itself requires a finding that up-the-ladder immunity does not apply. This argument contradicts Fireman's Fund v. Sherman & Fletcher, 705 S.W.2d 459 (Ky. 1986) and Dilts v. United Group Services, LLC, 2012 WL 4069576, *10 (6th Cir. Sept. 17, 2012)(rejecting the placement of an unwarranted emphasis on the use of the companies' own employees in the regular course of business as controlling). The fact that the majority of the periodic cleaning of the slurry tanks and associated equipment was performed by API instead of Carbide is of no significance under the statute. Granus, 821 F.2d at 1257. As stated above, "[e]ven though [a Defendant] may never perform that particular job with his own

7

employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." Fireman's Fund, 705 S.W.2d at 462. It is uncontested that Carbide regularly cleaned out slurry, dust, and other by-products of its manufacturing process from its equipment at its Louisville facility. In fact, the record reflects that Carbide hired API on numerous occasions to provide the cleaning services at its facility. Finally, the Court also rejects the Plaintiffs' argument that because the slurry tanks were only cleaned when necessary, as opposed to fixed intervals, the cleaning cannot be deemed "regular or recurrent." As noted by the Kentucky Court of Appeals, neither term "requires regularity or recurrence with the preciseness of a clock or calendar." Daniels, 933 S.W.2d at 824.

Having concluded that Carbide contracted with API to perform "work . . . of a kind which is a regular or recurrent part" of Carbide's business, Carbide is deemed to be a contractor within the meaning of the Kentucky Workers' Compensation Act. Thus, Plaintiffs' complaint is barred by the exclusive remedy of workers' compensation, and the Defendant's motion for summary judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant for summary judgment [DN 24] is **GRANTED**. The Court will enter a Judgment consistent with this Opinion.

                                                      Joseph H. McKinley, Jr., Chief Judge
                                                      United States District Court

cc: counsel of record
                                                                   September 24, 2012